[Cite as *Greer v. Bruce*, 2014-Ohio-4901.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT GREER, | : | APPEAL NO. C-140121 |
| | | TRIAL NO. A-1104694 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| GERALD BENJAMIN BRUCE, | : | |
| | | |
| and | : | |
| | | |
| EARL L. BRUCE, | : | |
| | | |
| Defendants-Appellants. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 5, 2014

*Stephenie N. Lape* and *Kenneth G. Hawley,* for Plaintiff-Appellee,

*Daniel E. Whitely, Jr.,* for Defendants-Appellants.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1}    Defendants-appellants Gerald Benjamin Bruce and Earl L. Bruce appeal the judgment of the Hamilton County Court of Common Pleas awarding damages to plaintiff-appellee Robert Greer in a suit for conversion.   The trial court entered the judgment after a trial before a magistrate.

### Ownership Claims

{¶2}    Greer testified that, in 2010, he had entered into an oral agreement with Earl Bruce to use property owned by Bruce and later by Bruce's son, Gerald Bruce.   Greer used the Bruce property as a "laydown yard" to store industrial equipment while offering it for sale.  According to Greer, he was permitted to use the Bruce property in exchange for bringing in clean landfill, grading the land, and giving half of the proceeds from salvageable items already on the land to Earl Bruce.

{¶3}    Greer had access to a key to the property, and he placed a large array of industrial equipment, including generators, fuel tanks, and pumps on the land.  Greer testified that Earl Bruce had mentioned clearing the property at various times, with Greer stating that he would comply with his requests or demands.  On Thursday June 16, 2011, Greer went to the laydown yard and saw that the entrance was blocked by a deputy sheriff.  A man who worked for Earl Bruce told Greer that he would have to remove his equipment by the following Monday.  Greer testified that before this, he had never been told to remove any of his equipment.

{¶4}    On Friday June 17, 2011, Greer again went to the property to begin collecting his equipment.  This time, he was met by Robert Writesel, a man whom the Bruces had hired to clear Greer's equipment from the land.  Despite Earl Bruce's

2

representation that Greer would have until Monday to remove his property, Writesel and his crew were hauling away the equipment Friday morning.

{¶5} While Greer photographed the removal of his property, Writesel made an obscene gesture that was caught on camera. Greer sought an injunction from the trial court to prevent the further removal of his equipment, but he was unsuccessful in his efforts.

{¶6} The evidence demonstrated that Writesel had sold Greer's equipment for its scrap value. Greer presented expert evidence that the value of the items removed by Writesel was $344,990. Greer also presented evidence that Writesel had removed only valuable equipment and that numerous items without resale or scrap value had been left on the Bruce property.

{¶7} Earl Bruce testified that he had never given Greer permission to use his property. According to Bruce, Greer had been permitted to use adjacent land that Bruce had leased from Whitewater Township. Bruce stated that Greer had encroached on his property despite repeated warnings that he was trespassing. Bruce also stated that he had finally arranged for Writesel to clear the land so it could be leased to someone else. Despite his claim that he simply wanted the land cleared, Bruce could not cogently explain why only the valuable items had been removed.

{¶8} Gerald Bruce testified that, when he had acquired the land from Earl Bruce in 2010, he had assumed that all of the equipment belonged to his father. He stated that he had rarely visited the property and was not familiar with the business relationship between his father and Greer.

{¶9} The magistrate found that the Bruces had converted Greer's property and that the value of the property was $344,990. But because Greer had testified that he would have been charged a 12 percent commission on the sale of the

items, the magistrate recommended that the court award compensatory damages in the amount of $303,591.20. The magistrate also recommended an award of punitive damages in the same amount. The trial court overruled the Bruces' objections and entered judgment in accordance with the magistrate's recommendation.

**The Judgment for Conversion**

{¶10}   In their first assignment of error, the Bruces argue that the trial court erred in entering judgment in favor of Greer. They first argue that they had acted lawfully because the trial court had allegedly authorized them to clear Greer's equipment from the property. In support of their argument, they cite the magistrate's refusal to enjoin the removal of the equipment as well as the magistrate's oral pronouncement that the Bruces could "clean the place up" and do what they "need to do."

{¶11}   We find no merit in this argument. It is well settled that a court speaks only through its journal entries. *Hooten v. Safe Auto Ins. Co.,* 1st Dist. Hamilton No. C-010576, 2004-Ohio-451, ¶ 7. In this case, the trial court did not journalize any pretrial decision with respect to the property, and any reliance on the oral pronouncements of the magistrate was misplaced.

{¶12}   The Bruces next contend that, because Greer was a trespasser on their property, they had the right to remove the equipment and could not be properly held liable for conversion. Greer maintains that he was a lessee of the land and was wrongfully deprived of his property.

{¶13}   Conversion is the wrongful exercise of dominion over property in exclusion of the owner's right, or the withholding of property from the owner's possession under a claim inconsistent with the owner's rights. *See Eysoldt v. Proscan Imaging,* 194 Ohio App.3d 630, 2011-Ohio-2359, 957 N.E.2d 780, ¶ 26 (1st

4

Dist.), citing *Zacchini v. Scripps-Howard Broadcasting,* 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976), and *Norwell v. Cincinnati,* 133 Ohio App.3d 790, 811, 729 N.E.2d 1223 (1st Dist.1999). Thus, we must determine whether the Bruces' confiscation and sale of the equipment was wrongful.

{¶14} First, we reject the Bruces' contention that Greer was a trespasser. Greer adduced evidence that he had an oral lease with the Bruces to use their land as a "laydown yard," and the trial court found that evidence to be credible. Because Greer was given access to the property and used it openly for an extended period of time, we cannot say that the trial court lost its way in finding him to be a lessee. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19-20.

{¶15} Next, we must determine whether the Bruces acted properly in using "self-help" to evict Greer. We agree with the trial court that the Bruces' actions were unlawful.

{¶16} R.C. 1923.04 provides that a commercial landlord must give three days' notice of the intent to evict and must then use judicial process to effectuate the forcible entry and detainer. Courts have recognized an exception to these requirements in the commercial setting where the parties have agreed to waive the statutory safeguards. *See, e.g.,* *Northfield Park Assoc. v. Northeast Ohio Harness,* 36 Ohio App.3d 14, 521 N.E.2d 466 (8th Dist.1987) (self-help methods were not precluded by statute or public policy where a commercial lease provided for waiver of judicial process).

{¶17} But there is nothing in the record to indicate that the parties in the instant case agreed to waive the statutory requirements or to otherwise provide for the kind of "self-help" methods employed by the Bruces. And there was certainly no evidence that Greer had agreed to permit the Bruces to summarily confiscate and sell

the property stored on the Bruces' land without compensating him for its value. Thus, the trial court did not err in finding the Bruces liable for conversion, and we overrule the first assignment of error.

## Punitive Damages

{¶18} In their second and final assignment of error, the Bruces argue that the trial court erred in awarding punitive damages.

{¶19} To be entitled to punitive damages, a plaintiff must demonstrate that the defendant had acted with actual malice, which has been defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill-will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Eysoldt,* 194 Ohio App.3d 630, 2011-Ohio-2359, 957 N.E.2d 780, at ¶ 44, citing *Blair v. McDonagh,* 177 Ohio App.3d 362, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 65 (1st Dist.). The decision to grant or deny punitive damages is within the discretion of the trial court. *See Kemp v. Kemp,* 161 Ohio App.3d 671, 2005-Ohio-3120, 831 N.E.2d 1038, ¶ 73 (5th Dist.).

{¶20} In this case, we find no abuse of discretion. Greer adduced evidence that the Bruces had first given him a date to remove his equipment and had then taken possession of the property three days before the deadline. With Writesel's assistance, the Bruces had converted the equipment and immediately sold it for scrap without giving Greer an opportunity to challenge their actions. To add insult to injury, Writesel made an obscene gesture in response to Greer's reasonable requests for them to stop confiscating his property.

{¶21} The Bruces attempted to explain the extreme measures they had taken by stating that they needed to clear the land. But this assertion was belied by the fact that only the valuable items were removed from the land, with numerous

other large but worthless items permitted to remain. Under these circumstances, the trial court correctly held that the Bruces had acted with a conscious disregard for Greer's rights, and punitive damages were warranted.

{¶22} The Bruces do not separately argue that the amount of punitive damages awarded in this case was excessive. Instead, they challenge only the trial court's determination that malice had been demonstrated. We nonetheless note that the judgment was within the limits imposed by R.C. 2315.21(D)(2), and we find nothing excessive in the damage award. Accordingly, we overrule the second assignment of error.

## Conclusion

{¶23} We affirm the judgment of the trial court.

Judgment affirmed.

**DINKELACKER, J.,** concurs.
**HENDON, J.,** concurs in part and dissents in part.

**HENDON, J.,** concurring in part and dissenting in part.

{¶25} I concur in the majority's holding that the Bruces were properly held liable for conversion and that the trial court did not abuse its discretion in awarding punitive damages. But because I believe the trial court placed too much emphasis on Writesel's conduct in determining the amount of punitive damages, I would hold that the award was excessive.

{¶26} It is evident from the tenor of the magistrate's decision that Writesel's obscene gesture was the impetus for awarding punitive damages in the same amount as the compensatory award. But Writesel was an independent contractor. There was no evidence that the Bruces had any control over Writesel's actions or that they had countenanced his lack of decorum. Under these

7

circumstances, I would remand the cause to the trial court for a reconsideration of the punitive-damages award.  Accordingly, I dissent in part.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

