[Cite as *InfoCision Mgt. Corp. v. Donor Car Center, Inc.*, 2016-Ohio-789.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

INFOCISION MANAGEMENT
CORPORATION, CARL ALBRIGHT,
AND AYANNA MILLS

    Appellants

    v.

DONOR CARE CENTER, INC., et al.

    Appellees

C.A. No.      27034

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2010-03-1587

DECISION AND JOURNAL ENTRY

Dated: March 2, 2016

OSOWIK, Judge.

**{¶1}** This is an appeal from a judgment of the Summit County Court of Common Pleas which arose from appellants' claims of misappropriation of trade secrets and breach of a non-disclosure agreement. For the reasons set forth below, the judgment of the trial court is affirmed.

**{¶2}** The undisputed facts relevant to the issues raised on appeal are as follows. Appellant InfoCision Management Corporation ("InfoCision") provides telemarketing services to nonprofit organizations. InfoCision and Donor Care are competitors. Appellees Donor Care and Synergy Direct Marketing Solutions, LLC ("Synergy") are wholly-owned subsidiaries of appellee Ameridial Enterprises ("Ameridial"). Donor Care works with Synergy, a consulting firm that provides fundraising advice to nonprofit organizations. Donor Care and Synergy also share common executives and other employees, some of whom are former employees of InfoCision. Those include appellees Alexander Stavarz, a former InfoCision employee who is

president of both Donor Care and Synergy; Curtis Stern, Synergy's vice-president, who formerly worked as InfoCision's director of marketing, and Justin Henry, a Synergy account manager, formerly an InfoCision account representative.

{¶3} In March 2010, InfoCision filed suit against former employee Kevin Johnson, Synergy, Donor Care, Stavarz, Stern, Henry, Ameridial and Patricia Zachman (Ameridial's vice-president). InfoCision alleged in the trial court that Synergy and Donor Care decided in 2008 to compete for two of InfoCision's nonprofit accounts—the American Center for Law and Justice ("ACLJ") and the World Harvest Church. The record reflects that in early 2008, Synergy recruited InfoCision employee Kevin Johnson, who had experience with the ACLJ account, to become its director of strategic fundraising. After leaving InfoCision to join Synergy, Johnson focused primarily on Donor Care projects.

{¶4} InfoCision alleged that after Johnson moved to Synergy/Donor Care, he sought information on how his former employer was performing on the World Harvest Church account from his friend Kevin Cooper, who was then working for InfoCision. Ultimately, Cooper provided Johnson with a "script" used by InfoCision solicitors on an appeals campaign, a daily "progress report" on the ACLJ campaign, a "segment report" containing information on donor demographics, and various statistics regarding InfoCision's performance on an account for the World Harvest Church.

{¶5} InfoCision eventually conducted an investigation of Johnson's and Cooper's actions and confronted Cooper, who confessed and resigned. Cooper admitted that he divulged private, confidential and proprietary information to Donor Care's employee Kevin Johnson, at various times between June and August 2008. InfoCision alleged that Johnson had stolen proprietary information regarding the ACLJ and World Harvest Church accounts, and that the

other Synergy and Donor Care defendants had either authorized him to do so or ratified the "theft" after the fact, using the information to gain a competitive advantage.

{¶6} In May 2010, Donor Care filed a counterclaim against InfoCision, Carl Albright (president and CEO of InfoCision) and Ayanna Mills (an InfoCision call center supervisor who had previously worked for Donor Care), alleging unfair competition and misappropriation of trade secrets. Donor Care also brought a third-party complaint against Ayanna Mills and Carl Albright for unfair competition, misappropriation of trade secrets and breach of fiduciary duty.

{¶7} Synergy filed a counterclaim as well against InfoCision alleging unfair competition and tortious interference. The unfair competition and tortious interference counterclaims were based on InfoCision's filing of the lawsuit.

{¶8} After considering various motions for summary judgment, the trial court allowed InfoCision's claims for misappropriation of trade secrets, tortious interference with contract and business relationship, and breach of nondisclosure agreement (alleged against Johnson only) to go to the jury. Further, the trial court granted summary judgment in favor of Ameridial and Zachman.

{¶9} A two-week jury trial began on July 25, 2011. On August 5, 2011, the jury returned verdicts in favor of Donor Care and Synergy, essentially finding that Donor Care had not misappropriated InfoCision's trade secrets. The jury found in InfoCision's favor on its breach of nondisclosure agreement and tortious interference claims against Kevin Johnson. The jury also found for Synergy and Donor care on their counterclaims for unfair competition and for Synergy against InfoCision and Albright on Synergy's counterclaim for tortious interference.

{¶10} Additionally, the jury awarded Donor Care and Synergy "all attorneys' fees incurred." Following a hearing to determine the amount of attorney fees, the trial court awarded

Synergy $215,075.50 from InfoCision and Albright. The trial court awarded Donor Care, Zachman and Ameridial (all represented by the same counsel) $149,292 in attorney fees from InfoCision and Mills pursuant to R.C. 1333.64, which allows such an award if a party brings a trade secret misappropriation claim in bad faith.

{¶11} The trial court further awarded punitive damages to Synergy and Donor Care on their unfair competition counterclaims in an amount equal to twice the attorney fees—$430,151 to Synergy and $298,584 to Donor Care, Ameridial and Zachman jointly.

{¶12} On August 22, 2011, InfoCision filed a Civ.R. 50(B) motion for judgment notwithstanding the verdict, or in the alternative, motion for a new trial, pursuant to Civ.R. 59. InfoCision moved for judgment notwithstanding the verdict ("JNOV") on Donor Care's claims for unfair competition, tortious interference with business relations and breach of fiduciary duty. InfoCision also moved for JNOV on its own claim for tortious interference with the non-disclosure agreements. By judgment entry filed November 22, 2011, the trial court found that InfoCision was not entitled to JNOV on any of the verdicts rendered by the jury. The trial court also found that there was substantial, competent evidence to support the jury's verdict on Synergy's claim for tortious interference with business relations, its verdict on Synergy's and Donor Care's unfair competition claims, and the verdict on InfoCision's claim against Synergy and Donor Care for tortious interference with its non-disclosure agreement.

{¶13} On August 3, 2012, InfoCision again moved for judgment notwithstanding the verdict on Donor Care's and Synergy's counterclaims or, in the alternative, for remittitur of the court's punitive damage awards. It argued, inter alia, that the counterclaims failed as a matter of law because InfoCision's lawsuit was objectively reasonable and because Donor Care and Synergy had presented no evidence of damages with the exception of their attorney fees. On

August 16, 2012, Donor Care filed a brief in opposition in which it argued that the motion for JNOV, remittitur and new trial was untimely and that InfoCision's recent filings were frivolous. On January 7, 2013, the trial court denied InfoCision's motion.

{¶14} Because several abandoned claims remained of record on the docket, and to render the trial court's judgment final, on July 8, 2013, the trial court entered its final judgment entry, confirming and memorializing its previous rulings on attorney fees, punitive damages, and sanctions in favor of the Donor Care defendants and resolving all claims.

{¶15} Appellants timely appealed, setting forth the following assignments of error:

> I. The trial court erred in denying JNOV on Donor Care and Synergy's counterclaims.

> II. The trial court's punitive-damage awards were not supported by law or fact and violated due process.

> III. The trial court erred by awarding attorney's fees to Donor Care and Synergy under R.C. 1333.64.

> IV. The trial court erred by awarding attorney's fees to the Donor Care defendants under R.C. 2323.51.

> V. A new trial is required on InfoCision's tortious interference claims because the court failed to instruct the jury on ratification.

{¶16} In support of their first assignment of error, appellants assert that a JNOV as to Synergy's counterclaims was required because the trial court's holdings, the jury verdict and the facts all showed that InfoCision's lawsuit was objectively reasonable, and because Donor Care and Synergy presented no evidence of compensatory damages.

{¶17} In order to rule on this claimed error, we must examine the procedural history of this matter beginning with the jury's verdicts. The jury returned verdicts in favor of Donor Care and the other defendants on August 5, 2011, and the trial court entered judgment on each verdict on August 11, 2011. On August 22, 2011, InfoCision moved for JNOV and/or new trial

("JNOV-1"). In support, InfoCision argued that the defendants did not prove any actual damages, which barred their counterclaims; the finding regarding the tortious interference claim was flawed; defendants' counterclaim for unfair competition was improper because the tort could not be based upon the filing of a lawsuit with probable cause, and Kevin Johnson's tortious conduct must be imputed to his employers.

{¶18} All parties fully briefed the first JNOV motion and the trial court denied it in its entirety on November 22, 2011, finding that substantial, competent evidence existed to support each of the jury's findings.

{¶19} After entry of judgment on the verdicts, defendants-appellees moved on August 30, 2011, to have their attorney fees and punitive damages determined by the trial court in accordance with the jury's verdicts. On August 30, 2011, Patricia Zachman and Ameridial also moved for sanctions against InfoCision pursuant to R.C. 2323.51, asserting that InfoCision held them as party defendants despite the lack of any evidence against them.

{¶20} The issues were extensively briefed by both parties and an evidentiary hearing was held on February 23, 2012. On March 21, 2012, InfoCision filed another brief—a "Post-Hearing Reply"—regarding punitive damages and other legal issues that were raised at the evidentiary hearing. InfoCision argued that there was no competent proof of "actual malice" required for an award of punitive damages.

{¶21} On May 16, 2012, the trial court awarded attorney fees and punitive damages to Donor Care and the other defendants by way of a comprehensive judgment entry addressing the evidence and arguments presented in support of attorney fees and punitive damages. The trial court stated: "The jury awarded attorney fees as compensatory damages. The Court is not going to re-litigate the facts."

**{¶22}** On May 22, 2012, InfoCision moved for reduction of the award of attorney fees and punitive damages due to the accidental inclusion of expert fees in the awards to Donor Care. Donor Care acknowledged the error and consented to the reduction, whereupon a nunc pro tunc was entered on July 20, 2012.

**{¶23}** On August 3, 2012, InfoCision, through new counsel, filed a second motion for new trial, remittitur and JNOV ("JNOV-2"). The motion set forth several arguments, including: defendants did not prove any actual damages, which barred their counterclaims; defendants' counterclaim for unfair competition was improper because the tort cannot be based upon the filing of a lawsuit with probable cause; the trial court failed to apply the appropriate factors in awarding punitive damages; the punitive damages awarded were excessive and should be subject to remittitur; the punitive damages were improper because only "legal" and not "actual" malice was proven; the sanctions to Ameridial and Zachman were improper because InfoCision had probable cause to pursue its claims against them, and a new trial was required on the tortious interference claims because no jury instruction on "ratification" was given.

**{¶24}** In its January 7, 2013 judgment entry, the trial court stated that it had already addressed, in its November 22, 2011 judgment entry, the issues presented in InfoCision, Albright and Mill's second motion for JNOV, remittitur and new trial. The court further stated:

> Prior to issuing its November 22, 2011 Judgment Entry, the Court fully considered the facts of this matter, the parties' arguments, and applicable law. While InfoCision has asked the court to consider the Sixth District's recent ruling in Leadscope, this ruling does not change the Court's analysis and holding. Considering that the Court already issued a ruling, InfoCision, Albright and Mills' August 3, 2012 Motion is essentially a motion for reconsideration and/or an attempted appeal.

**{¶25}** Appellants' first assignment of error is not well-taken for several reasons as set forth by the trial court. First, as is evident from the facts summarized above, the motion was

untimely. Both Civ.R. 50(A) and 59 require that such a motion be filed within 14 days of the entry of judgment. However, InfoCision's JNOV-2 was not filed until almost one year after judgment was entered on the verdicts, over nine months after JNOV-1 was denied, over five months after the trial court ruled on the post-trial motions and ordered an evidentiary hearing, and over 11 weeks after the trial court addressed the remaining issues concerning attorney fees and punitive damages.

{¶26} There was no entry of judgment under Civ.R. 50(B) or 59 within 14 days of InfoCision's second JNOV motion that would have permitted the motion to be considered by the trial court. The proper time to move for JNOV or a new trial was within 14 days of the trial court's entry of judgment upon the jury verdict of August 9, 2010, which InfoCision did in JNOV-1. The trial court rejected the arguments and denied the motion after full consideration of the merits.

{¶27} Additionally, InfoCision's JNOV-2 is improper pursuant to Civ.R. 50(B) because the judgment entry as to the final amount of compensatory and punitive damages was issued by the trial court, not a jury. Civ.R. 50(B) "governs motions for judgment notwithstanding the verdict; however, as the term 'verdict' implies, it only applies to cases tried by jury." *Freeman v. Wilkinson*, 65 Ohio St.3d 307, 309, 603 N.E.2d 993, 995 (1992). The "verdict" in favor of appellees was rendered as a final judgment on August 9, 2011; an objection to the trial court's May 16, 2012 judgment entry pursuant to Civ.R. 50(B) is not applicable since the entry was not a "verdict." *Id.* at 309.

{¶28} As to the attorney fees and punitive damages, InfoCision should have filed JNOV-2 within 14 days of the May 16, 2012 judgment. InfoCision did not do that, choosing instead to move for a minor remittitur on the award to Donor Care (to which Donor Care

consented). Then, with new counsel, InfoCision began to reargue issues that had already been fully briefed and argued by the parties and ruled on by the trial court. At the time JNOV-2 was filed, the trial court had already ruled that Synergy and Donor Care had proven a right to compensatory damages.

{¶29} The trial court's dismissal of InfoCision's JNOV-2 was proper as the motion was duplicative and untimely, as set forth above. Accordingly, appellants' first assignment of error is not well-taken.

{¶30} Appellants' second, third and fourth assignments of error will be considered together as they are interrelated.

{¶31} In its second assignment of error, InfoCision asserts that the trial court abused its discretion in awarding punitive damages. InfoCision argues that the punitive damage awards were not supported by law or fact and violated due process. Appellants' third and fourth assignments of error challenge the trial court's awards of attorney fees to Donor Care and Synergy under R.C. 1333.64 and to Donor Care under R.C. 2323.51.

{¶32} We will first consider the issue of attorney fees challenged in assignments of error Nos. 3 and 4, since it was those awards, ordered as compensatory damages, which then became the basis for the punitive damages challenged in assignment of error No. 2.

{¶33} R.C. 1333.63(A) allows a party to recover damages for the misappropriation of its trade secrets. R.C. 1333.63(B) provides that if "willful and malicious misappropriation exists, the court may award punitive or exemplary damages in an amount not exceeding three times any award made under division (A) of this section." R.C. 1333.64 provides, in relevant part, that "the court may award reasonable attorney's fees to the prevailing party, if * * * (C) willful and malicious misappropriation exists." In light of the "may award" language used in R.C.

1333.64(C), the decision whether to award punitive damages or attorney fees under those provisions rests within the trial court's discretion, and its decision will not be reversed on appeal absent an abuse thereof. *Becker Equip., Inc. v. Flynn*, 12th Dist. Butler No. CA2002-12-313, 2004-Ohio-1190, ¶ 11.

{¶34} As to R.C. 1333.64, the record reflects that the trial court had a reasonable basis to award attorney fees to Donor Care and Synergy under the statute. The jury found in favor of Donor Care and Synergy on InfoCision's misappropriation claim. In so doing, and as evidenced by the instructions to the jury, the jury necessarily found that InfoCision had brought its claims maliciously and without good faith for the purpose of harassing and injuring both Synergy and Donor Care. The jury was instructed as follows:

> InfoCision [has] engaged in malicious acts by way of instituting this litigation against Defendants where:
>
> (1) The action was not founded in good faith; and
>
> (2) The action was instituted for the purpose of harassing and injuring the aggrieved party; and
>
> (3) The aggrieved party was Plaintiff's competitor.

{¶35} With the above instruction, the jury found in favor of Donor Care on its unfair competition claim. Given the jury's findings, the trial court did not abuse its discretion in awarding attorney fees. The record includes testimony that Carl Albright admitted that none of the information or documents provided by Cooper to Johnson constituted trade secrets; InfoCision had not lost any business or suffered lost profits as a result of Cooper's actions; Albright's source of information (Mills) was a liar and fraudster rewarded for providing information and confidential Donor Care documents with an InfoCision job, benefits and privileges, despite InfoCision's earlier policy barring Mills from being re-hired; and Albright wanted to crush Donor Care and put it out of business by running up legal fees.

{¶36} That testimony, combined with the jury's findings that InfoCision lacked good faith and probable cause, is sufficient to support the statutory award of attorney fees to Donor Care.

{¶37} Further, as to the award of attorney fees to Synergy pursuant to R.C. 1333.64, based on the jury's findings in favor of Synergy on its unfair competition and misappropriation claims following the instructions as cited above, the trial court was well within its discretion to award attorney fees under this statute.

{¶38} InfoCision, in its fourth assignment of error, also asserts that the trial court improperly awarded attorney fees to Donor Care under R.C. 2323.51, which provides for an award of attorney fees to "any party adversely affected by frivolous conduct."

{¶39} The record reflects that InfoCision never came forward with credible evidence of misappropriation of trade secrets by Zachman or Ameridial. Although the legal expenses incurred were reflected in the bills submitted at the February 21, 2012 hearing, InfoCision's conduct was nonetheless sanctionable. And since the legal fees were already considered and properly awarded to Donor Care pursuant to R.C. 1333.64 as discussed above, any argument further challenging the award under R.C. 2323.51 is without merit. Appellants' third and fourth assignments of error are not well-taken.

{¶40} In their second assignment of error, appellants challenge the trial court's punitive damage awards. A decision to award punitive damages is subject to an abuse of discretion standard of review. *Kemp v. Kemp*, 161 Ohio App.3d 671, 2005-Ohio-3120, 831 N.E.2d 1038 (5th Dist.). The term abuse of discretion infers more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶41}** "An award of punitive damages, under Ohio law, is warranted in a tort case upon a finding of actual malice, fraud, oppression, or insult on the part of the defendant." *Berge v. Columbus Comm. Cable Access*, 136 Ohio App.3d 281, 316, 736 N.E.2d 517 (10th Dist.1999). The following guideposts are to be considered when awarding punitive damages: "the reprehensibility of the tortfeasor's conduct, the ration of punitive damages to compensatory damages, and the civil penalties authorized in comparable cases." *Id.*

**{¶42}** The record reflects that the trial court's opinion in support of the award of punitive damages, included in its May 16, 2013 judgment entry, was based on extensive post-verdict motions and briefing, a hearing on attorney fees and other damages, and pre- and post-hearing briefing. The trial court's judgment entry reflects that it considered all arguments presented by the parties and cited the proper standard in assessing the punitive damages. Further, the parties agreed, as reflected in the judgment entries of November 22, 2011 and May 16, 2012, that the trial court would make the determination of attorney fees and punitive damages if warranted by the jury's verdict. In this case, the jury determined that InfoCision acted in bad faith with an intent to harass and injure Synergy and Donor Care. The jury found that InfoCision engaged in malicious acts by filing the lawsuit, that the lawsuit was not brought in good faith, that the lawsuit was brought for the purpose of harassing and injuring, and that InfoCision did not have probable cause to bring the action. Accordingly, the trial court properly found that punitive damages should be awarded and appellants' second assignment of error is not well-taken.

**{¶43}** In their fifth assignment of error, appellants assert that the trial court abused its discretion by failing to instruct the jury on ratification, thereby warranting a new trial. Generally, requested jury instructions should be given if they are a correct statement of the law

as applied to the facts of the case. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991). "[A] court's instruction to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings." *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). Further, a determination as to jury instructions is a matter left to the sound discretion of the trial court. *Id.*

**{¶44}** Civ.R. 51(A) requires that proposed jury instructions be submitted "at the close of evidence or at such earlier time during the trial as the court reasonably directs." The purpose of this requirement is to allow sufficient time for the court and opposing counsel to "fairly examine and pass upon them." *Morgan v. Sheppard*, 188 N.E.2d 808, 816 (8th Dist.1963).

**{¶45}** The record reflects that in its March 31, 2011 case management order, the trial court set an "earlier time" for the submission of written jury instructions and instructed they be filed and exchanged on or before July 13, 2011: "[T]he Court hereby Orders as follows…A JURY TRIAL has been scheduled for July 25, 2011 at 9:00 a.m. Any motions in limine, jury instructions, and witness/exhibit lists shall be field with the Court and exchanged between the parties on or before the Final Pretrial scheduled for July 13, 2011."

**{¶46}** InfoCision filed its proposed jury instructions on July 13, 2011, requesting instruction pursuant to five sections of the standard Ohio Jury Instructions. InfoCision did not request or reserve the right to amend or add instructions. The record further reflects that during opening statements, counsel for InfoCision suggested that Synergy may have ratified the conduct of its employee Kevin Johnson. Other than that, the record shows no further discussion of agency ratification by InfoCision.

**{¶47}** On July 29, 2011, the trial court provided the parties with a draft of the jury instructions. An instruction on ratification was not included. On August 1, 2011, when    the

parties and the trial court began discussions regarding the draft jury instructions, InfoCision did not express a desire for a ratification charge. However, the following day InfoCision filed a modified proposed jury instruction on the issue of ratification. The next day, during final discussions on the instructions, InfoCision noted an objection to the lack of a ratification instruction without elaborating; the issue was not discussed.

{¶48} Upon review of the record with regard to the issue of ratification, we find that InfoCision failed to comply with the trial court's instruction to file and exchange written proposed jury instructions on or before July 13, 2011. InfoCision filed an untimely instruction based upon an issue it had not presented at trial. A possible instruction on ratification was not discussed prior to InfoCision's statement that it objected to the lack of same on the next to last day of trial. As stated above, the only mention of the issue of ratification occurred during opening statements when InfoCision's counsel suggested that Synergy may have ratified the conduct of its employees.

{¶49} Based on the foregoing, we find that the trial court's decision to not include a jury instruction on ratification was not unreasonable, arbitrary or unconscionable and, therefore, was not an abuse of discretion. Accordingly, appellants' fifth assignment of error is not well-taken.

{¶50} Upon the consideration of the foregoing, the judgment of the Summit County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellants pursuant to App.R. 24.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

THOMAS J. OSOWIK
FOR THE COURT

SINGER, J.
YARBROUGH, J.
CONCUR.

(Judges Arlene Singer, Thomas J. Osowik, and Stephen A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

APPEARANCES:

THOMAS D. WARREN and G. KARL FANTER, Attorneys at Law, for Appellants.

JOHN J. RAMBACHER, STEPHEN P. GRIFFIN and MICHAEL J. KAHLENBERG, Attorneys at Law, for Appellees.

JAMES M. MCHUGH, Attorney at Law, for Appellees.